IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 17, 2010 Session

MARK W. URLAUB, as next of kin and Executor of the Estate of BERTHA
WORLEY URLAUB v. SELECT SPECIALTY HOSPITAL-MEMPHIS,
INC., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-0001821-08     Robert L. Childers, Judge

No. W2010-00732-COA-R3-CV - Filed January 20, 2011

Plaintiff filed this medical battery suit on behalf of his deceased mother and named as defendants the nephrologist who ordered an allegedly unauthorized hemodialysis procedure, another treating physician, and the hospital where she was treated. The trial court granted summary judgment to the treating physician who did not order the procedure and to the hospital. Plaintiff appeals. We find that both of these defendants were entitled to summary judgment and therefore affirm the trial court's decision.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Mark W. Urlaub, Prince Frederick Maryland, *pro se*

James L. Kirby, Jeffrey L. Griffin, Memphis, Tennessee, for the appellee, Select Specialty Hospital-Memphis, Inc.

Michael G. McLaren, William E. Cochran, Jr., Memphis, TN, for the appellee, Louis V. Eberle, III, M.D.

## OPINION

### I. FACTS & PROCEDURAL HISTORY[1]

On April 13, 2007, Bertha Urlaub was admitted to Select Specialty Hospital ("Hospital"), in Memphis, under the care of her physician, Louis V. Eberle, III, M.D. ("Dr. Eberle"). Mrs. Urlaub, who was in her seventies, had previously suffered a brain injury after undergoing an operation at another hospital, and she was ventilator-dependent, comatose, and unresponsive. Dr. Eberle specialized in the area of internal medicine. During his care of Mrs. Urlaub, Dr. Eberle requested numerous consults in the areas of nephrology, gastroenterology, endocrinology, diabetes, neurology, infectious disease, surgery, and cardiology. He requested a nephrology consult due in part to Mrs. Urlaub's decreased urine output. A nephrology consult was performed on May 1, 2007, and the nephrologist's impression was acute renal failure, among other things. Hemodialysis was recommended to treat Mrs. Urlaub's renal failure.

On May 5, 2007, another nephrologist, Mark Shermer, M.D. ("Dr. Shermer") had a telephone conversation with Mrs. Urlaub's son, Mark Urlaub ("Plaintiff"), who lived in Maryland and held power of attorney over Mrs. Urlaub's affairs. Dr. Shermer suggested to Plaintiff that Mrs. Urlaub needed to undergo hemodialysis treatments in order to reduce her swelling and fluid buildup due to her decreased urine output. Dr. Shermer explained the benefits, risks, and potential complications of hemodialysis treatment. Plaintiff then consented to his mother's receipt of hemodialysis treatment under certain conditions, including that such treatment was not to occur on consecutive days, and that his authorization was necessary prior to each procedure.

On May 9, Mrs. Urlaub completed a hemodialysis treatment with Plaintiff's consent. On or about May 10, Dr. Shermer and Plaintiff had another telephone conversation, during which Dr. Shermer told Plaintiff that if hemodialysis treatments were not performed on consecutive days for at least a few days, "we're going to fall so far behind in the fluid balance that everything is going to be futile." Dr. Shermer also explained that he could not effectively provide ongoing supportive care to try to sustain Mrs. Urlaub's life unless Plaintiff gave him some leeway to handle the hemodialysis treatments using his best

---

[1] Because the order appealed was made final pursuant to Tennessee Rule of Civil Procedure 54.02, other claims remain pending in the trial court. The facts set forth in this opinion are drawn from the limited record we have before us on appeal. Our inclusion of any particular fact in this opinion should not be construed as a conclusive finding of fact that would prevent the parties from presenting additional evidence regarding the fact or prevent the trial court from making different findings of fact based on the evidence presented by the parties.

judgment. According to Dr. Shermer, Plaintiff expressed that "he wanted everything done" to try to save his mother's life. Following this conversation, it was Dr. Shermer's understanding that it was "left to [Dr. Shermer's] best judgment as to what [Mrs. Urlaub] needed to give her the best chance to survive." It was also Dr. Shermer's impression that Plaintiff understood that it was necessary to perform hemodialysis on consecutive days for a few days.

Mrs. Urlaub completed another hemodialysis treatment on May 11 with Plaintiff's consent. On May 12, Plaintiff learned from his sister that Mrs. Urlaub was scheduled to undergo another hemodialysis treatment that evening. Plaintiff immediately called the Hospital and spoke with a hospital staff member, and eventually, Plaintiff spoke with Dr. Eberle. Dr. Eberle verified that Mrs. Urlaub was scheduled to undergo hemodialysis again that evening as ordered by Dr. Shermer. According to Plaintiff, he was adamant in instructing Dr. Eberle that Mrs. Urlaub was not to undergo the hemodialysis treatment. After further discussion, the conversation allegedly "[went] downhill fast," with Dr. Eberle stating, "you're not a doctor" and "if we don't do this Dr. Shermer is just going to walk," to which Plaintiff responded, "I don't give a [expletive] whether he walks or whether you like this or not, I am directing you not to do this treatment." According to Plaintiff, Dr. Eberle would not give him Dr. Shermer's telephone number but stated that he would relay Plaintiff's information to Dr. Shermer. Dr. Eberle then allegedly told Plaintiff to get his sister up to the Hospital to witness the hemodialysis treatment.

After his conversation with Dr. Eberle, Plaintiff called the Administrator of the Hospital, David Key, who stated that he could not intervene in the situation. Plaintiff then called his sister, and she went to the Hospital and witnessed the procedure. Approximately one hour after the hemodialysis treatment was completed, Mrs. Urlaub suffered cardiac arrest, and she died the next day.

Plaintiff filed this lawsuit as next of kin and executor of the estate of Mrs. Urlaub, alleging medical battery and medical negligence against numerous defendants, including Dr. Shermer, Dr. Eberle, the Hospital, a nurse, and Bio-Medical Applications of Tennessee, Inc., which is an entity that allegedly owned and operated the hemodialysis unit. The complaint stated,

> Defendant [Hospital] is being sued in its capacity as owner and operator of the hospital wherein the care and treatment of Plaintiff Bertha Urlaub was given; in its capacity as the principal and/or employer of Defendant Bio-Medical Applications of Tennessee, Inc.; and in its capacity as the direct or indirect principal and/or employer of Defendant Nurse Bobbie Hinds. Should facts other than those alleged herein become apparent during discovery, Defendant

[Hospital] should be on notice that it is also being sued as the principal and/or employer of any agents and/or employees who may be discovered to have cared for Plaintiff Bertha Urlaub negligently or without informed consent.

Plaintiff subsequently stipulated in an agreed order that Bio-Medical Applications of Tennessee, Inc., and Nurse Hinds should be granted summary judgment, and it dismissed its claims against those defendants with prejudice. In later consent orders, Plaintiff voluntarily dismissed his claims of medical negligence against Hospital, Dr. Shermer, and Dr. Eberle, with prejudice. However, his claims for medical battery against those three defendants remained pending.

Dr. Eberle filed a motion for summary judgment, contending that he did not commit medical battery because he did not order, perform, or participate in the hemodialysis treatment that Plaintiff alleged constituted medical battery. Numerous affidavits and deposition excerpts were filed with the court. The trial court granted summary judgment to Dr. Eberle because it found nothing to indicate that Dr. Eberle "ordered or participated in any way" in the hemodialysis treatment. Instead, the court found, "[i]t was strictly on order of Dr. Shermer and Dr. Shermer participated." The trial court denied a motion for summary judgment filed by Dr. Shermer, finding that questions of fact remained regarding his liability for medical battery.

Hospital had also filed a motion for summary judgment, in which it contended that the Hospital had no duty to obtain consent for the hemodialysis procedure and therefore it could not be liable for medical battery.[2] In response, Plaintiff claimed that he was asserting that the Hospital was vicariously liable for the actions of Dr. Shermer and Dr. Eberle. The trial court granted Hospital's motion for summary judgment upon finding that there was no allegation in Plaintiff's complaint that Dr. Shermer and Dr. Eberle were agents of Hospital. In addition, the court found that Plaintiff had failed to establish that either Dr. Shermer or Dr. Eberle acted as an agent of Hospital. The orders granting summary judgment to Dr. Eberle and to Hospital were made final pursuant to Tennessee Rule of Civil Procedure 54.02, and Plaintiff timely filed a notice of appeal.

## II. ISSUES PRESENTED

Plaintiff presents the following issues, as we perceive them, for review on appeal:

1. Whether the trial court erred in granting summary judgment to Dr. Eberle on the claim for medical battery.

---

[2] It alternatively argued that there was consent for the procedure.

-4-

2.	Whether the trial court erred in granting summary judgment to Hospital based upon its finding that Plaintiff did not allege or establish apparent agency.

For the following reasons, we affirm the decision of the circuit court.

### III.	STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green v. Green**, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). Thus, "a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." **Martin**, 271 S.W.3d at 83 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." **Id.** (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). "[T]o negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." **Id.** at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." **Id.** (citing *McCarley*, 960 S.W.2d at 588; *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. **Id.** However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." **Id.** (citing *Staples*, 15 S.W.3d at 89).

# IV. DISCUSSION

## A. *The Claim for Medical Battery against Dr. Eberle*

In his complaint, Plaintiff alleged that Mrs. Urlaub was given the May 12 hemodialysis treatment "on the orders of Defendant Mark Shermer, M.D. and Defendant Louis Eberle, M.D." but that "neither Defendant Mark Shermer, M.D. nor Defendant Louis Eberle, M.D. were in attendance at the bedside" during the hemodialysis treatment. In support of his motion for summary judgment on the medical battery claim, Dr. Eberle submitted his own affidavit stating that he did not order the hemodialysis treatments that Mrs. Urlaub received while at Hospital. Furthermore, he stated, he was not physically present and did not otherwise participate in the treatments.

Mr. Key, the Hospital Administrator, submitted an affidavit as well, in which he stated that "Dr. Shermer maintained complete charge and control of the medical care and treatment that he formulated for Ms. Urlaub including the writing of orders for treatment."

Dr. Shermer explained during his deposition that "the nephrologist has to give the orders for [a hemodialysis procedure] and makes the decision about whether to do the dialysis and then how it's to be done." He explained that a dialysis nurse "puts the patient on the machine and monitors the patient during the time of the treatment and ultimately when the treatment's completed takes the patient off the dialysis." Dr. Shermer testified that he was the only person who had input into the decision of whether to perform Mrs. Urlaub's dialysis procedures on consecutive days and that he wrote the orders. Dr. Shermer testified that if he had been told that Plaintiff wanted to speak with him, then he would have attempted to call Plaintiff.[3] Dr. Shermer said that if he had spoken with Plaintiff, and Plaintiff had insisted that Mrs. Urlaub not undergo dialysis on consecutive days, he would have told him, as he had just two days earlier, that it was necessary to do treatments on consecutive days or else their efforts would have been futile. Dr. Shermer said he "might have had to sign-off the case."

Plaintiff submitted an expert affidavit in support of his claims, in which Plaintiff's expert stated that "it was decided by the renal consultant, Dr. Mark Shermer, to 'try hemodialysis/ultrafiltration.'" The expert opined that, "[b]ased on the medical record, the standard of care in this patient [sic] required that the renal consultant, Dr. Mark Shermer, obtain a consent form from the patient's power of attorney, Mark W. Urlaub, prior to each

---

[3] Based on this statement, we infer that Dr. Shermer did not receive a message from Dr. Eberle. The excerpts from Dr. Shermer's deposition do not address this issue further, and neither does Dr. Eberle's affidavit.

hemodialysis session." During Plaintiff's deposition, he testified that when he had instructed Dr. Shermer not to perform hemodialysis on consecutive days, those conversations were solely between himself and Dr. Shermer, and no one else.

Again, the trial court granted summary judgment to Dr. Eberle on the medical battery claim after finding nothing to indicate that Dr. Eberle "ordered or participated in any way" in the hemodialysis treatment. Instead, the court found, "[i]t was strictly on order of Dr. Shermer and Dr. Shermer participated."

Depending on the circumstances, more than one cause of action may arise when a physician performs a procedure without a patient's consent. *Church v. Perales*, 39 S.W.3d 149, 159 (Tenn. Ct. App. 2000). "[I]f the patient did not know that the procedure was going to be performed, or if the patient did not authorize the performance of the procedure, then the claim is for medical battery." *Hensley v. Scokin*, 148 S.W.3d 352, 356 (Tenn. Ct. App. 2003) (citing *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998)). "If the patient knew the procedure would be performed and authorized the procedure, but was not made aware of the inherent risks of the procedure, then the claim is for lack of informed consent."[4] *Id.* (*Blanchard*, 975 S.W.2d at 524). In addition, our Supreme Court has stated that the theories of battery and malpractice "are not ordinarily inconsistent, and no election of remedies is generally required; if a battery exists, then malpractice may not necessarily be reached, but if no battery can be shown, then the issue clearly emerges as one of malpractice." *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn. 1987). In other words, a physician's activities can be actionable in medical negligence apart from the issue of informed consent. *See id.*; D. Scott Porch, IV, "Recent Developments in Tennessee's Doctrine of Informed Consent," 30 U. Mem. L. Rev. 593, 600 (2000).

In *Bryant v. HCA Health Services of N. Tennessee, Inc.*, 15 S.W.3d 804, 807 (Tenn. 2000), our Supreme Court addressed an issue regarding who can be liable for failure to obtain informed consent, where plaintiffs alleged that a defendant hospital failed to obtain a patient's informed consent prior to a surgery performed at the hospital. The Court recognized that a hospital usually provides a staffed facility in which a non-employee physician performs the procedure but explained that the hospital "does not perform the

---

[4] For a medical battery claim, the plaintiff is not required to provide expert medical testimony because the patient's knowledge and awareness is the focus. *Hensley*, 148 S.W.3d at 356. In informed consent cases, expert evidence is required by statute. *Blanchard*, 975 S.W.2d at 524. However, even though the informed consent provision is part of the medical malpractice statute, and determining whether the defendant failed to obtain informed consent depends upon the standard of care of the profession or specialty, when "informed consent is not effectively obtained, the defendant's departure from the standard of care is not negligence but battery." *Cardwell v. Bechtol*, 724 S.W.2d 739, 750 (Tenn. 1987).

surgical procedure merely as a by-product of the non-employee physician's use of the hospital facilities." *Id.* at 809-10. "Accordingly," the Court concluded, "it is the non-employee physician and not the hospital who commits the battery when a surgical procedure is performed without legally effective consent." *Id.* at 810. "Mere status as one involved in [the] patient's care [was] insufficient[.]" *Id.*

We recognize that the Court in **Bryant** was analyzing an informed consent claim rather than a medical battery claim. However, we believe that the Court's reasoning is persuasive when applied to a battery claim as well. In fact, the Court began its discussion by noting that an informed consent claim is predicated upon a theory of battery. *Id.* at 808 (citing *Blanchard*, 975 S.W.2d at 524; *Cardwell*, 724 S.W.2d at 750 (holding that failure to comply with standard of care when obtaining informed consent constitutes battery)).

In the case before us, Dr. Eberle was involved in Mrs. Urlaub's care, but it was not Dr. Eberle who performed the allegedly unauthorized hemodialysis procedure. He was not present for the procedure, nor did he participate in the procedure. Despite what Plaintiff alleged in his complaint, Plaintiff concedes on appeal that the hemodialysis treatment in question was ordered by Dr. Shermer, not Dr. Eberle. However, he argues that Dr. Eberle committed medical battery "not by virtue of what is stated in the medical records exclusively, but rather, primarily by virtue of his behavior during the acrimonious phone conversation he had with [P]laintiff." We reject Plaintiff's assertion that the telephone conversation between Plaintiff and Dr. Eberle is sufficient to demonstrate that Dr. Eberle had control over the hemodialysis procedure ordered by Dr. Shermer in a manner that would give rise to liability for medical battery. "A battery necessarily requires an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant." *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989) (involving an informed consent claim against a doctor) (citing 6A C.J.S. *Assault & Battery* § 8(b) (1975)). Perhaps Dr. Eberle's conduct could form the basis of a claim for medical negligence or for some other tort, but we conclude that his actions do not constitute medical battery. Thus, the trial court properly granted Dr. Eberle's motion for summary judgment on the medical battery claim.

### B.  The Claim against Hospital based on Vicarious Liability

Plaintiff's second argument on appeal is that the trial court erred in granting summary judgment to the Hospital on the medical battery claim.[5] According to Plaintiff's brief on appeal, "Plaintiff alleges vicarious liability on the part of [Hospital] due to the apparent agency of defendant Eberle and a critical sequence of phone conversations that show

---

[5] As previously discussed, Plaintiff had voluntarily dismissed, with prejudice, his claim against the Hospital for medical negligence.

[P]laintiff's sincere belief that defendant Eberle worked for [Hospital]." His brief attempts to establish that Dr. Eberle acted as an apparent agent of the Hospital, but he does not address Dr. Shermer or attempt to argue that the Hospital should be held vicariously liable for his actions.[6] Thus, we will only consider whether the Hospital could be held vicariously liable for medical battery due to Dr. Eberle's actions.

The trial court found that Plaintiff's complaint failed to allege that Dr. Eberle was an agent of the Hospital, but it went on to find that summary judgment was also appropriate because Plaintiff had failed to establish that Dr. Eberle was acting as an agent of the Hospital. On appeal, the Hospital contends that summary judgment was proper on either of the two grounds mentioned by the trial court. It further argues that summary judgment was proper because the trial court had already granted summary judgment to Dr. Eberle, and the Hospital "cannot be vicariously liable for the alleged conduct of an agent who has been exonerated by an adjudication of non-liability."

Nearly one hundred years ago, our Supreme Court adopted the following rule in ***D.B. Loveman Co. v. Bayless***, 128 Tenn. 307, 160 S.W. 841 (1913):

> When the [principal] is sued solely for misfeasance, or nonfeasance, on the part of his [agents], being liable for their conduct only under the doctrine of respondeat superior, a verdict, permitted to stand in favor of such [agents], either in an action where they are sued with the [principal], or in a prior action, entitles the [principal] to a discharge from such claimed liability.

*See **Abshure v. Methodist Healthcare-Memphis Hospitals***, W2008-01486-SC-R11-CV, 2010 WL 4188221, at *7 (Tenn. Oct. 20, 2010). In other words, "'[a] principal may not be held vicariously liable under the doctrine of respondeat superior based upon the acts of its agent . . . when the agent has been exonerated by an adjudication of non-liability.'" ***Id.*** (quoting *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 345 (Tenn. 2002)). Thus, where an injured party sues the actual wrongdoer, or agent, and loses the action on a merits determination, the judgment precludes the injured party from suing the merely vicariously responsible party, as its liability is purely derivative. ***Id.*** (citing 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 5:16, at 537 (2010)).

---

[6] The appellate brief filed by Hospital pointed out that Plaintiff's brief had only raised an issue regarding the Hospital's purported vicarious liability for the conduct of Dr. Eberle. The Hospital's brief stated that Plaintiff had apparently conceded that Dr. Shermer, Biomedical Applications of Tennessee, Inc., and Nurse Hinds were not acting as agents of the Hospital. Plaintiff did not dispute this characterization of his claim in his reply brief.

Here, Plaintiff argued that the Hospital could be held vicariously liable for medical battery because Dr. Eberle was an apparent agent of the Hospital. Because we have found that the trial court properly granted summary judgment to Dr. Eberle on Plaintiff's medical battery claim, we likewise conclude that the Hospital was entitled to summary judgment, as the judgment in favor of Dr. Eberle precludes Plaintiff's vicarious liability claim against the Hospital based solely on Dr. Eberle's actions.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellant, Mark Urlaub, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.